# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA § | |
| § | |
| v. § | CRIMINAL ACTION H-07-338 |
| § | |
| (1) THANG DINH NGO § | |
| (2) KHAMPHPOUTHONG SAYAVONGSA § | |
| (3) RENA BLAKE KLENTZ § | |

## MEMORANDUM OPINION AND ORDER

Pending before the court are defendant Khamphpouthong Sayavongsa's motions to suppress illegally obtained statements (Dkt. 44) and illegally obtained evidence (Dkt. 43). Having considered the motions, the response, Sayavongsa's memorandum in support of the motions, the suppression hearing testimony, and the applicable law, the court finds that both motions should be DENIED.

## BACKGROUND

At approximately 3:30 p.m., on July 10, 2007, while being escorted by surveillance teams of Immigration and Customs Enforcement ("ICE"), defendant Rena Blake Klentz, a previously detained suspect turned informant, drove her vehicle to 9531 Red Maple, a single wide trailer on a large lot of land. Upon Klentz's arrival at the trailer, defendant Thang Dinh Ngo, who Klentz previously identified as the person requesting delivery of the narcotics to 9531 Red Maple, greeted her and began removing bags containing 196,000 tablets of Methylenedioxymethamphetamine ("MDMA") from Klentz's vehicle. ICE agents moved in and arrested Ngo, in the front yard of the trailer, while Ngo was in the process of moving the narcotics from Klentz's vehicle to a nearby parked vehicle. Agent Tom Annello asked Ngo if anyone else was in the trailer. Ngo responded that another person was in the residence.

Agents proceeded towards the trailer's front door. While shouting "police come out," agents heard what appeared to be the sound of movement inside the trailer. Other agents positioned at the rear of the trailer then observed Sayavongsa run from inside the trailer out the back door. Simultaneously, finding the front door ajar and upon hearing no response from inside the trailer, the agents positioned at the front of the trailer further opened the front door and entered. The agents immediately discovered a bag containing kilogram bricks of cocaine lying open near the front door. The agents continued through the trailer to determine whether anyone else was inside the residence. The agents secured the trailer and attempted to obtain a warrant.

Sayavongsa was detained as he exited the trailer's rear door in an apparent attempt to flee. Upon receiving his *Miranda* warnings he agreed to speak with agents. In his statement to Agent Scott Arnold, Sayavongsa disclosed, among other things, that the cocaine was not his, and that he had merely agreed to let Ngo store the narcotics at the trailer, which was determined to be Sayavongsa's residence. Further, Sayavongsa consented in writing to a search of his residence.

Upon searching the trailer, agents discovered approximately twenty four kilograms of cocaine. Agents also found approximately 6,665 additional tablets of MDMA, several scales, packaging paraphernalia, as well as fourteen to fifteen thousand dollars in a rubber band bundle. Upon further questioning about the substances and money found in his residence, Sayavongsa stated that he had sold cocaine up to six months ago but had quit. Sayavongsa also stated that he knew the tablets were in the house but maintained that he had allowed Ngo to store them in his home.

## MOTION TO SUPPRESS ILLEGALLY OBTAINED STATEMENTS

Sayavongsa moves the court to suppress any statements made in violation of his constitutional rights. The initial burden of proof is on the defendant who seeks to suppress evidence.

*United States v. Evans*, 572 F.2d 455, 486 (5th Cir. 1978), *cert. denied*, 439 U.S. 870, 99 S. Ct. 200 (1978).  "Factual allegations in the defendant's motion must be sufficiently definite, specific, detailed, and non conjectural, to enable the [c]ourt to conclude that a substantial claim is presented." *United States v. Dean*, 100 F.3d 19, 21 (5th Cir. 1996).  The reliance on vague conclusory allegations does not provide sufficient notice to the Government of exactly what the defendant is contesting. Without more specifics, the Government is prevented from responding to the defendant with any degree of certainty.

In *United States v. Martinez-Ibarra*, L-05-2392, 2005 WL 3088480, *1 (S.D. Tex. Nov. 17, 2005) (Alvarez, J.), the court denied a motion to suppress which stated, "[Defendant] asserts that he did not knowingly and intentionally waive his *Miranda* rights at any time during his interrogation by the Border Patrol agents, and he asserts that he expressly invoked his rights."  The court found that defendant's motion "fail[ed] to set forth the disputed facts," and therefore, "[i]n the absence of factual allegations setting forth the disputed facts" denied the motion.

Sayavongsa's motion to suppress illegally obtained statements merely states that any statements obtained while defendant was unlawfully in police custody are in violation of his Fifth Amendment rights and should be suppressed.[1]  The motion fails to set forth any disputed facts other than its conclusory allegation that Sayavongsa was unlawfully detained.  The conclusory assertion is insufficient. *See Martinez-Ibarra*, 2005 WL 3088480, *1 ("While the motion does state that Defendant 'never knowingly, voluntarily and intelligently waived his rights before he was

---

[1] At the suppression hearing, Sayavongsa similarly urged that the agents did not have probable cause to arrest him.  No facts, however, were contested to support the proposition of law.  Moreover, the court finds that the agents had sufficient probable cause to arrest Sayavongsa.

3

questioned,' such statement is conclusory."). Accordingly, Sayavongsa's motion to suppress illegally obtained statements is denied.

### MOTION TO SUPPRESS ILLEGALLY OBTAINED EVIDENCE

### Standard of Review

Warrantless searches "are per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well delineated exceptions." *United States v. Paige*, 136 F.3d 1012, 1022 (5th Cir. 1998) (quoting *Minnesota v. Dickerson*, 508 U.S. 366, 372, 113 S. Ct. 2130 (1993)). An arrest may be accompanied by a search incident to that arrest, to prevent the arrestee from accessing a weapon or destroying evidence. *United States v. Green*, 324 F.3d 375, 378 (5th Cir. 2003) (citing *Chimel v. California*, 395 U.S. 752, 763, 89 S. Ct. 2034 (1969)). This type of search is limited to the arrestee's person and to the area within his immediate control. *Id.* In some circumstances, police may also conduct a protective sweep of the area around an arrest scene, which may be "no more than a cursory inspection of those spaces where a person may be found" and "may last . . . no longer than is necessary to dispel the reasonable suspicion of danger" nor "longer than the police are justified in remaining on the premises." *United States v. Gould*, 364 F.3d 578, 587 (5th Cir.) (en banc) (quoting *Maryland v. Buie*, 494 U.S. 325, 335-36, 110 S. Ct. 1093 (1990)), *cert. denied*, 543 U.S. 955, 125 S. Ct. 437 (2004).

Under the Supreme Court's holding in *Maryland v. Buie*, the police may, "as a precautionary matter and without probable cause or reasonable suspicion, look in closets or other spaces immediately adjoining the place of arrest from which an attack could be launched." *Buie*, 494 U.S. at 334. "The protective sweep doctrine may apply even if the arrest occurs outside the home." *United States v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006) (citing *United States v. Watson*, 273

F.3d 599 (5th Cir. 2001); *United States v. Merritt*, 882 F.2d 916, 921 (5th Cir. 1989); *Kirkpatrick v. Butler*, 870 F.2d 276 (5th Cir. 1989)).

## Analysis

At the hearing, the evidence showed that upon arriving at 9531 Red Maple, Klentz pulled her truck into the driveway abutting the trailer and stopped in front of two vehicles parked next to the trailer. As Klentz approached the trailer, Ngo exited the trailer and escorted Klentz back to the truck. He then started unloading the bags of MDMA, moving them from Klentz's vehicle to the trunk of one of the cars parked next to the trailer. At that time, agents executed the sting and arrested Ngo. Upon his arrest, Ngo was immediately asked whether anyone else was present in the trailer. Ngo indicated that there was another person inside the trailer. Agents Mark Stewart, Christian Coffman, and Tom Annello then approached the trailer shouting warnings to the person inside and advising him to immediately exit the trailer. They noted that the front door was ajar. The agents also heard commotion and movement from within the trailer but no vocal response. Within seconds, Sayavongsa exited the trailer through the rear door where he was immediately stopped and arrested.[2] Simultaneously, the agents positioned at the front of the trailer heard another agent positioned behind the trailer yelling "get out, on the ground." At that moment, the agents decided to conduct a protective sweep and entered the trailer.[3]

Agent Stewart proceeded to the left. Upon approaching the couch, positioned four to six feet from the front entrance, Agent Stewart saw an open duffle back with taped packages that his

---

[2] Agent Domingo Gonzalez handcuffed Sayavongsa and then read him the *Miranda* warnings.

[3] After hearing movement and commotion in the trailer followed by the shouting of commands by the agents in the back of the trailer, Agent Stewart testified that "in my mind, the threat level had escalated again, thinking why hasn't this guy come out? Is he preparing to do something to us, to harm us?" It was at that moment that the decision to conduct the protect sweep was made.

experience told him were kilograms of cocaine. The agents proceeded and concluded the initial protective sweep in under one minute.[4] No evidence was confiscated at that time. However, shortly after, Agent Arnold approached Sayavongsa, explained that during the protective sweep drugs were found in the trailer,[5] and advised him that a search warrant had been sought.[6] At that moment, Sayavongsa explained that the drugs were not his, that he had merely permitted Ngo to keep the drugs in the trailer. Sayavongsa requested the consent to search form. After having the contents of

---

[4] Agent Stewart testified that the agents performed a secondary protective sweep immediately after concluding the initial sweep. Agent Stewart further testified that it is customary to conduct the secondary sweep to alleviate concerns that somebody may have been missed. The secondary sweep took no longer than thirty seconds.

[5] At the hearing, Sayavongsa contested Agent Arnold's mentioning that the duffel bag was found prior to obtaining Sayavongsa's consent to search the trailer. In summary, Sayavongsa urged that because the agents' entry into the home was unconstitutional, the consent was the fruit of Agent Arnold's utilizing illegally seized evidence. However, the plain view doctrine allows police to seize items without a search warrant. Such a warrantless seizure is permissible if: (1) the police lawfully entered the area where the item was located; (2) the item was in plain view; (3) the incriminating nature of the item was "immediately apparent;" and (4) the police had a lawful right of access to the item. *United States v. Buchanan*, 70 F.3d 818, 825-26 (5th Cir. 1995) (citing *Horton v. California*, 496 U.S. 128, 136-37, 110 S. Ct. 2301 (1990)).

The incriminating nature of an item is "immediately apparent" if the officers have "probable cause" to believe that the item is either evidence of a crime or contraband. *Arizona v. Hicks*, 480 U.S. 321, 326-27, 107 S. Ct. 1149 (1987). Probable cause does not require certainty. *See Texas v. Brown*, 460 U.S. 730, 742, 103 S. Ct. 1535 (1983) (holding that probable cause "does not demand any showing that such a belief be correct or more likely true than false"). In reviewing probable cause determinations, we must consider the totality of the circumstances—including the officers' training and experience as well as their knowledge of the situation at hand. *See United States v. Buchner*, 7 F.3d 1149, 1154 (5th Cir. 1993) (holding that a probable cause determination "must be viewed in light of the observations, knowledge, and training of the law enforcement officers involved in the warrantless search"); *United States v. Fooladi*, 703 F.2d 180, 183 (5th Cir. 1983) (holding that a probable cause determination should consider "the facts and circumstances known to the officer, and of which he has reasonably trustworthy information").

Agent Stewart is a seventh year special agent with ICE, with eleven years of police enforcement experience. At the suppression hearing, Agent Stewart testified that he had participated in approximately 20 controlled deliveries during his service with ICE. He further testified that he "immediately . . . noticed that there was a duffel bag on the ground that was open and there were about what I knew to be kilogram size packages of cocaine, or what I believed to be cocaine." Stewart further testified that he "immediately knew that the packages were consistent with packaging [he'd] seen on many other controlled deliveries of cocaine. . . . [One package] was halfway in this bag and halfway out of the bag." "I immediately thought the packages are consistent with cocaine, kilogram size packages of narcotics."

Under the plain view doctrine, the duffel bag and its content were properly seized because the protective sweep permitted the agents' presence in the trailer, the duffel bag was open and in plain view, the incriminating nature of the taped packages within the duffel bag was "immediately apparent," and the agents had a lawful right of access to the item under the plain view doctrine.

[6] Agent Arnold testified that prior to this conversation, he "made a phone call into Jesse Rodriguez with the U.S. Attorney's Office here in the Southern District of Texas" for the purpose of securing a search warrant for the trailer.

the consent to search form carefully explained to him, Sayavongsa signed the form. A canine unit performed a sweep of the home. A subsequent search resulted in the discovery of additional narcotics, weight scales, packaging materials, plastic baggies, and a compact disk case with cocaine residue and rolled up bills.

Depending on the circumstances, a protective sweep may be permissible even when law enforcement agents have no certain knowledge that other individuals are in the house. *See, e.g.*, *Watson*, 273 F.3d 599; *United States v. Howard*, 106 F.3d 70 (5th Cir. 1997); *United States v. Mendoza-Burciaga*, 981 F.2d 192 (5th Cir. 1992). In *United States v. Watson*, officers arrested a suspect on the front porch of his house. Subsequently, the arresting officer performed a protective sweep of the house to look for dangerous persons. The law enforcement agents were concerned that illegal drugs inside the home would be destroyed if the agents waited to obtain a search warrant. Also, the "officers believed that there was a possibility that [the suspect] might have additional accomplices who were still inside the house and could pose a threat to the officers' safety." *Watson*, 273 F.3d at 603. The arresting officer testified that "he lacked specific reason to believe other individuals were in the house but that the possibility always exists." *Id.* at 601. The Fifth Circuit upheld the validity of the protective sweep despite "the factual basis for [the officers'] concerns [being] disputable." *Id.* at 603.

In *United States v. Howard*, officers arrested a suspect on the porch of his house and conducted a warrantless protective sweep of the home to determine if anyone else was present. *Howard*, 106 F.3d at 72. The Fifth Circuit noted, *inter alia*, the officers' concerns for their own and others' safety and the possibility that third persons inside the suspect's house may be alerted to police presence outside by the gathering of a crowd. *Id.* at 74-75. Consequently, the court found that

exigent circumstances justified the officers' warrantless entry into the suspect's home. *Id.* at 80. The *Howard* court stated that "although the officers did not observe someone looking through Howard's window and did not see anyone else enter Howard's home and not exit," our inquiry is not so narrow. *Id.* at 77. "We must look to the totality of the circumstances and for both direct and circumstantial evidence of exigency." *Id.* The *Howard* court concluded that the record contained enough circumstantial evidence to support a finding that the crowd may have alerted Howard to the presence of police: Howard's residence had been under surveillance for only a short time, there was a known narcotics-related traffic pattern in and out of the home, and the agent leading the investigation testified that he did not know whether other persons besides Howard were inside the residence. *Id.*

In *Maldonado*, law enforcement agents were concerned for their own safety after arresting a suspect in the driveway abutting a trailer. *Maldonado*, 472 F.3d at 392. The Fifth Circuit found the agents' lack of concern for potential destruction of evidence did not preclude a finding of exigent circumstances. *Id.* at 395. The *Maldonado* court concluded that "the brief time available to conduct surveillance of the trailer, the exposure of the agents in the open area surrounding the trailer, the opening and closing of the trailer door during Castillo's arrest, and the reasonable expectation that weapons are present during drug transactions are sufficient circumstantial evidence to support a finding that the agents' fear was reasonable. Under these circumstances, the district court was not clearly erroneous in finding exigent circumstances justifying the protective sweep." *Id.*

At the suppression hearing, Agent Arnold testified that it was common for drug dealers to attempt to flee. Moreover, Agent Arnold testified that it was not uncommon for drug dealers to discharge firearms while attempting to flee. Agent Stewart, informed by his training and seven years

of experience as a special agent, characterized the drug business as volatile and dangerous. He testified that during deliveries of over $1 million of narcotics, it was reasonable to foresee higher levels of risks, potential for gunfire, chances of physical altercation, and general danger levels. Additionally, Agent Stewart testified that due to the aforementioned expectations and the direct knowledge that another person was present in the trailer, the agents were gravely concerned for their own safety and, therefore, conducted the sweep to alleviate any further danger posed by person(s) inside the trailer. Having considered the totality of the circumstances, the court finds that the agents' warrantless entry into Sayavongsa's trailer for the purpose of conducting a protective sweep was grounded in sufficient exigency.

After determining that exigency justified a warrantless entry into a residence, the court must determine whether the police created the exigency. *Howard*, 106 F.3d at 78. "Exigent circumstances may not consist of the likely consequences of the government's own actions or inactions. In determining whether officers created the exigency, the court focuses on the 'reasonableness of the officers' investigative tactics leading up to the warrantless entry.'" *United States v. Gomez-Moreno*, 479 F.3d 350, 355 (5th Cir. 2007) (quoting *United States v. Jones*, 239 F.3d 716, 720 (5th Cir. 2001)).

Sayavongsa urges that the ICE agents foresaw the eventual inevitability of entering the trailer long before initiating the sting. The hearing testimony showed that approximately one and one-half hours prior to Ngo's arrest, the agents knew that the controlled delivery was going to take place at 9631 Red Maple, rather than at Klentz's home, as originally planned. Moreover, Agent Stewart testified that he knew there was a good chance the sting team would be entering the trailer at some

point that day. Furthermore, the presence of two cars at the trailer indicated that there was a good chance there was another person in the home.

Nevertheless, this evidence is not enough to deem unreasonable the agents' investigative tactics leading up to the warrantless entry. Agent Arnold testified that he had instructed Klentz not to enter the trailer upon her arrival. Moreover, Agent Arnold testified that other than the brief drive-by of the residence between 2 and 2:30 p.m., the only surveillance of the property was by helicopter, which began just prior to Klentz's arrival. Furthermore, the sting was focused on the bags of MDMA in Klentz's vehicle. The agents did not have information leading them to believe that other drugs were in the trailer. The agents' decision not to obtain a search warrant for the trailer prior to the sting was not unreasonable merely because they foresaw a possible entry into the trailer one and one-half hours before the sting.[7] Therefore, Sayavongsa's motion to suppress illegally obtained evidence is denied.

## CONCLUSION

For the foregoing reasons, Sayavongsa's suppression motions are DENIED.

Signed at Houston, Texas on January 22, 2008.

_____
Gray H. Miller
United States District Judge

---

[7] Without the accompanying circumstances found to have created the exigency justifying the warrantless entry, the agents' entrance into the trailer would likely have required a validly obtained search warrant. Nothing in the record suggests that the agents' tactics were aimed at circumventing that requirement.

10